Mr. Hearn for the Petitioner, Mr. Peters for the Respondent. Mr. Rogers, this is Judge Cassius. Are you ready? Yes, yes I am. Alright, counsel you may proceed in number 19, 1163. Good morning, may it please the court. This is Richard Hearn and I represent some 3400 forecasters, technicians and support personnel at over 150 weather service offices nationwide. In 1987, in United Paper Workers v. Misco, the Supreme Court held that so long as an arbitrator is even arguably conscruing or applying a contract, a court cannot overturn his award even if it is convinced that an arbitrator made a serious error. But the FLRA is living in a pre-Misco world, laboring under the misimpression that it can judge the reasonableness of an arbitrator's interpretation of a collective bargaining agreement. Nowhere in the Authority's brief does it deny that it substituted its judgment for that of Arbitrator Evans' interpretation of the agreement. In fact, it devoted the last three pages of its brief to argue why its interpretation of Article 29 was more reasonable than that of Mr. Evans. And although the FLRA's interpretation of Article 29 is beside the point, it was arbitrary and capricious for multiple reasons. The Authority said that the Union requested the services of the FMCS too early in negotiations, but the Authority ignored and never mentioned in its decision Section 16 of the Ground Rules, which are found on pages 128 and 143 of the Joint Appendix, which reads, Either party may invoke the services of the FMCS at any time. Article 29, Section 2 of the agreement required the parties to negotiate ground rules for their missed agreement. These ground rules were negotiated in accordance with Article 29. The Ground Rule 16 uses the exact same phrase as Article 29, Section 3, invoke the services of the FMCS. The Ground Rule 16 negotiated subsequent to Article 29, Section 3 must be read in paramateria with Article 29. The Authority also ignored the regulations of the Federal Mediation and Conciliation Service, which directs the parties to notify it and invoke its services at the beginning, not the end of negotiations. And if the purpose of Article 29, Section 3 is to expedite negotiations as the FLRA contends, starting the 90-day termination clock ticking earlier rather than later advances rather than hinders the goal the Authority says that Section is trying to achieve. Counsel, can I ask you, I have a hard time understanding Article 29, Section 3. Is it the Union's position that the best reading of this termination clause is that if anyone invokes the services of the FMCS or FSIP, that that therefore cuts off the ability of the other side to terminate the agreement? It reads that way to me. Yes, that's the plain reading of it, yes. But then the first sentence makes it sound as if that is just a tolling provision, that if you seek the services of these mediation services, that's just that while the mediation services are involved, that tolls the 90-day clock, and once that period is over, the clock starts running, sort of like a speed trial act provision. It sounds like that as well, doesn't it? Well, that is not, that is an interpretation that nobody has argued in this matter. And I, rather than trying to analyze the reasonable matter of that interpretation, I think that all, anybody concerned is bound by the Arbitrator Evans interpretation of the agreement. And I guess our major point is, once Arbitrator Evans has interpreted the contract, that's the end of any analysis that must be given to the meaning and term of the contract. Unless it's patently unreasonable or beyond his authority or something of that nature. Well, beyond authority means he's doing, he's answering an issue that was not presented to him. The Arbitrator, on its face, the arbitration decision on its face, purported to interpret the agreement. That's the end of the matter. There was one case from this circuit, and I apologize that I don't know which of the many cases from this circuit, so I don't know how brief it was, but Circuit Judge Kavanaugh wrote a decision where he claimed, clearly said, that the Arbitrator's interpretation was wrong, and that the court thought it would never have reached that interpretation, but was powerless to substitute its judgment for that of the Arbitrator's. Mr. Hearn, I think your position has tremendous force on the merits of the contract claim, but I wonder if we have jurisdiction over that issue. Why should we, I mean, this is an odd circumstance where you're saying, you know, the predicate for statutory, we only have review to the extent this order involves a statutory violation, and the only statutory violation you've alleged is a breach of contract, is predicated on violation of the collective bargaining agreement. You could always turn a breach question into a ULP question, and if you get review of the breach question on the theory that the order involves the ULP, you've just wiped away entirely the principle that an Arbitrator's decision on a contract claim is supposed to get one and only one level of review, which is before the FLRA. Well, thank you for asking that question, and we have multiple answers to that. It is not a simple breach that makes it a ULP, it's a repudiation of the entire agreement. Fair enough, and just assume that I think we have jurisdiction to address the repudiation issue, because that is statutory. Okay. That requires something more than a breach. Why shouldn't we limit our review to the repudiation issue, which is statutory? Okay, here's the answer to that. There are three cases in this circuit that this court reviewed an arbitration decision from the FLRA that involved an unfair labor practice. In none of those three cases was the court's decision on the merits, what the court actually reviewed, the question of whether or not an unfair labor practice had been committed. And if I could explain, the first case, the Overseas Education Association case, what the court reviewed in that case was not whether an unfair labor practice had been committed, or whether the FLRA had properly found that there was an unfair labor practice or not. That was Judge Starr's opinion? Yes. That's the one I have in mind, and I'll let you walk me through the other two, but that was the case in which what we reviewed was a question whether a statutory claim that proceeded on the FLRA charge track was different from a contractual grievance claim which proceeded on the arbitrator track in order to trigger, in order to prevent splitting of claims. That seems to me very different from what you're asking us to do here, which is review straight away the contractual question of breach as opposed to the statutory question of repudiation. I would answer that in the OEA case, there was no discussion of unfair labor practice law or analysis of whether an unfair labor practice had been committed. But what was reviewed was the interpretation of 7116 of the statute, which precluded subsequent processing of a grievance over the same issue, and a finding by the court that it wasn't, as a factual predicate, the same issue. None of that involved unfair labor practice law. Also in that court, Judge Starr wrote that the use of the phrase involved, quote, strongly suggests that something less than the treatment of the merits is required, close quote. So if something less than treatment of the merits is required or is acceptable for review, then a fortiori you can have a review of an FLRA decision without any discussion or treatment or analysis of the merits of an unfair labor practice case. But in this case, the two questions are intermeshed. And this raises the question of whether the amended decision is considered at all. But in the initial decision, the only basis on which the authority found that there was no illegal repudiation was because they found that the agency was privileged in terminating the contract. That was the only basis that they found there was no unfair labor practice in its initial decision. So with regard to the two other cases in this circuit that reviewed and set aside FLRA decisions in arbitration awards that involved unfair labor practice, the second one is Naval Underseas Warfare Center versus the FLRA at 655 F3rd 1339. In that case, Judge Kavanaugh wrote that the substantive question under review was not some unfair labor practice issue that arose under the statute, but whether the arbitrators ordered that the Navy continue to provide its employees with bottled water was consistent with the federal appropriations law. The third case is Department of Commerce, USPTO versus the FLRA, 672 F3rd 1092, in which a panel of this court, which included Judge Rogers, set aside an FLRA decision affirming an arbitration award based on the law of collateral estoppel, not involving any analysis of whether there was a statutory unfair labor practice, but merely that there was an earlier case that the union lost on the same issue and that the union was collaterally stopped from bringing the second arbitration case that the court set aside. In each of these cases, the finding that a ULP was involved in some way merely opened the door to reviewing the FLRA's decision on some basis other than whether the ULP had been committed, and the ultimate issue the court decided in each of those three cases did not involve the law of unfair labor practices. There is no authority, and the authorities cited no authority, that said that once the court has jurisdiction over the review of the case because it involves an unfair labor practice, it is limited to reviewing only part of the decision. And finally on jurisdiction, even if 7123A1 does not provide this court with the jurisdiction to review the entirety of the authority's decision, we believe that the court has jurisdiction to do so under both Leeson v. Kine and this court's decision in Customs Service versus FLRA at 43 F3rd 682. In that case, this court found that there was no unfair labor practice involved in the arbitration award it set aside. But it set aside the award on the grounds that the FLRA exceeded its jurisdiction by reversing an arbitration award that involved a grievance that was outside the scope of what the statute defines as a grievance. It was a quasi-jurisdictional basis that the court set aside the FLRA decision, and I think as we view this, this is clearly a jurisdictional question of whether the authority has grounds to set aside arbitration awards under the statute on something other than the private sector standard as defined by the Supreme Court. It goes directly to the FLRA's jurisdiction, and therefore we believe they've overstepped their jurisdiction by using a basis other than that which is approved by the circuit and the Supreme Court in the private sector. I have not yet addressed why we still think there is an unfair labor practice, and perhaps I should do that in rebuttal and address the court before I address our thoughts on that now. Just one more question from me, which is, assuming you prevail on the jurisdictional question that we've just been discussing, and assuming we agree with you on the merits of the contract claim, right, so we reinstate the arbitrator's decision that the employing agency breached the collective bargaining agreement. If we get that far, do we need to reach the ULP question? Haven't you gotten full relief at that point? Well, a certain additional relief comes with the unfair labor practice question, including what would be a mandatory notice in posting of an unfair labor practice as is customarily ordered by the FLRA, an email from the agency head to the employees transmitting a notice assuring them that no similar unfair labor practices will be committed. There are certain additional remedies that can be provided. Understood. Thank you. All right. So let us hear from the authority, and then we'll give you some time on rebuttal. May it please the court. Noah Peters for the Federal Labor Relations Authority. The union in this case is asking this court to do something that it has never done before, which is to review the merits of an authority arbitration decision that has no bearing on the law of unfair labor practices. This is a question that this court has considered for over 30 years, and it has consistently held that, for example, quoting the AFG 2006 decision at page 505-506, it talked about a case in which the authority's order addresses both an unfair labor practice and an attorney's fees issue. It said, in that case, the rationale for review of the order would obtain to the extent and only to the extent the unfair labor practice was involved. Or, for example, in the custom service case, which is cited by the union, 43-3-686, we have recognized that the merits of an arbitrator's award that implicates only the collective bargaining agreement are, by virtue of the categorical nature of 7-1-2-3 and its bar on judicial review of authority arbitration decisions, absolutely immune from judicial review. This is an integral part of the statutory scheme, the review scheme that was created by Congress, and there is no warrant for reviewing the authority's order to the extent that it involves pure issues of the authority's review of the arbitrator's decision. I understand the force of that point and the potential of this theory to unravel a decision to subject arbitrator decisions only to FLRA review, but on the other hand, how in the world could we say that this case... ...to the extent the order involves a ULP, and you all have settled authority which allows a complainant to say that a breach of a collective bargaining agreement is the ULP, and that's the theory that they've invoked here. We literally cannot possibly assess whether there's a ULP predicated on a breach of a collective bargaining agreement without looking at the question whether there was a breach of a collective bargaining agreement. Sure, and so the answer to that will depend on ULP law to some extent, and so the court looks to ULP law, and it finds that as long as the agency is acting under reasonable interpretation of the contract, it has not committed a ULP. Fortunately, in this case, the union does not even argue that the agency's interpretation of this termination provision was unreasonable. It's not an argument that it could make. So to that extent, the court would apply ULP law. It would find that ULP law says not every contractual breach is an unfair labor practice. It has to be unreasonable, and that's been the authority's standard for decades. It's been the NLRB's standard for decades, so it applies that law, and it finds that there's not even an argument that this is unreasonable, that the agency's interpretation was unreasonable, and that's really the end of the matter. I mean, you can also look to the fact that, of course, there was no repudiation of the bargaining arrangement with the union. So just so I understand, in the course of deciding the ULP statutory question, you would permit us to determine whether the employing agency's position on the contract was a reasonable one, which is the statutory question under your repudiation law. We could decide whether their view of the contract was a reasonable one, just not whether it was a correct one. Yes, I think that that's right. I mean, the ULP issue is whether there was a repudiation, ultimately. So whether the agency acted under a reasonable interpretation of the contract, which, again, isn't really an issue in this case, I would argue, because there's no claim that it was unreasonable. But yes, to that extent. But again, the guideposts here have been set by this court for decades. For example, the OEA case, where it said that the conduct at issue must actually be characterized, and the claim pursued, by whatever route, as a statutory unfair labor practice and not as something else. So to the extent this claim has been pursued as a statutory unfair labor practice, the court can resolve it as a statutory unfair labor practice question. It can review whether the authority has correctly applied ULP law. And so it would look to such factors as to whether there was a repudiation in the context of this agreement. It can look at, you know, that sort of thing. Am I still on? I'm getting weird noises. I can hear you. You are still on. Okay, good. So, yes. So, to the extent that the circuit is reviewing the ULP issue, then of course it can pass on the fact on whether the agency acted in accordance with a reasonable interpretation of the contract. And I think there's no question that the interpretation of the contract here was reasonable, and that under the circumstances, the authority's conclusion that there was no ULP, it was a reasonable one. It wasn't an arbitrary capricious one. It wasn't not in accordance with ULP law. And again, as Your Honor pointed out before, if this is the opposite, and if there is a way to get kind of factual review of the totality, not just of the contract issue, but also of arbitration law just writ large, you know, has the authority applied its standard, this would mean that in any case, if you tack on a ULP claim to a contract claim, you get plenary, full-blown review of the entire case. You get a review of the merits of the authority's application of this standard of review that's clearly directed towards it. And you get plenary review. And the courts have consistently said that indirect review of a contractual holding, of an authority contractual holding, is not permitted because the language of 7123 is clear. That judicial review is permitted only to the extent that ULP law is addressed. So, to the extent arbitration law is at issue. That was the issue in the Act 2007 case where the court clearly held through the distinction between arbitration law and ULP law. And to the extent that there's a question of arbitration law, which there was in Act 2007, even a question of arbitration law that blocked the ULP from even being considered by the court, that was beyond the court's jurisdiction in the Act 2007 case. And that's been this court's consistent statement on the jurisdictional question for 30 years. A couple of the cases that were just cited, I don't believe were in the union's brief, such as the USPTO case. And I don't believe the Bottle of Water case was either. But the OEA case is fully consistent with our position today. In that case, the question was whether a previous required substantive evaluation of ULP law. It required, or at least of an unfair labor practice, to see whether an unfair labor practice had properly been presented by a later case. And whether it was barred by different doctrines. There's never been a case where the circuit has just kind of writ large reviewed the authority's application of arbitration law. And reviewed the authority's application of this essence standard, which is, again, directed towards it. And there's also a question, the question of whether the authority has applied the essence standard in a matter that's just as deferential as a circuit court would have applied it. Is, again, would pretty much open the door for unlimited plenary review of the authority arbitration decisions. Because there would always be a question of whether the authority had been deferential enough, whether it had been too deferential. That's precisely the sort of fine-brained, you know, purely subjective question that is completely beyond the bounds. That's something Congress intends to close the door to and say, you get one shot at review of an arbitrator's award on arbitration law. That's before the authority. To the extent ULP law is involved, you get it reviewed in the D.C. Circuit. But we want to ensure that this remains quick and final. We don't want to tack on an additional layer of judicial review in the D.C. Circuit. And the way to respect that is to put in force the language that Congress used in 7123. And I do want to address the point of Leadham versus Kine. So we brought up Leadham in our brief as an example of the fact that the authority had not made a sort of grievous error. But, of course, Leadham v. Kine only applies to district court jurisdiction. It doesn't apply to appellate court jurisdiction. And so there is to the extent that the union attempts to make hay out of Leadham v. Kine, it ultimately must be unsuccessful in this case. Hello? Do you want to address the issue about what is before us in terms of the authority's initial decision versus its amended decision? Sure. The fact is that every, you know, the authority has this court's jurisdiction under 7123 becomes inclusive upon the filing of a certified record. And every tribunal, whether administrative, judicial, has an inherent authority to try to get it right. There is a public interest in allowing the agency to try to reach a right result, to try to streamline judicial review. And that's what the authority did with it was to issue an amended decision before the filing of the certified index, which includes a more fulsome discussion of ULP law, which, again, is an attempt to address the court's concerns about delay and unfair prejudice and ensure that there will be a fulsome decision, a complete decision, a complete record for this court to review. And that is the circumstance in this case. To ignore the amended decision, the only advantage to the union in that case is forcing the agency to litigate on an incomplete record to possibly force a remand that could otherwise have been avoided had the amended decision been considered. So the union is left to argue for a position that could only result in more delay and more prejudice, which is forcing the agency to litigate on a conceitedly incomplete record, to force the court to decide the case on an admittedly incomplete record without the agency's more fulsome views on the ULP question. What is the prejudice then, so I understand it, to a remand? Well, the prejudice would be the delay. I mean, the fact is if the... Half of the employees. Right. Yeah, I think there's prejudice, too, to the public interest, right, because this forces the agency, if there was a ground, if, for example, the amended decision would have been affirmed, would have been found to be legally sufficient, but the original one was not, then that would force a sort of unnecessary, I mean, it would prejudice the public because it would force an unnecessary remand reconsideration. It would force, you know, the agency to use its limited resources to adjudicate a case on remand that might have been avoided had the court considered the amended decision, and ultimately there is a... Maybe the court, but the court denies the motion to remand. That's what I'm trying to understand. Yeah, and we obviously acknowledge that, but the, you know, the court's concern was delay and prejudice. It said, we don't want to allow a full-blown remand because we're concerned that the case is going to go back for months. We're, you know, it's going to delay things. The union would have to file another petition for review, all of those factors. Issuing an amended decision within a week of that order, before the filing of the certified record, before briefing, which allows for full-blown merits briefing on the issue, which doesn't in any way provide prejudice to the union. It is fully consistent with the concerns expressed in the order, which is we don't want this case to go back into the freezer and sit there for a long time for no good reason. And so we heard it, and so that's why the agency very quickly issued an amended decision in full time for the union to be able to, and for us to be able to fully brief all of the issues in the case. And if there are no further questions, I'll submit. Any further questions? Hearing none. Thank you. Thank you. All right. Counsel for petitioner? Yes, thank you. We do not believe that the court should consider the rationale in the amended decision, but we will refer to our briefs on that issue and address some of the other issues about whether or not an unfair labor practice has been committed. I think we disagree with the claim that never before has the court reviewed an arbitration decision on some basis other than the law of the unfair labor practice. I will refer back to my opening argument in which we view that in every case that this court has reviewed an FLRA decision involving an unfair labor practice, it has done so on the basis of something other than unfair labor practice law. On the actual unfair labor practice, if we were to examine the amended decision, we think that the amended decision itself is a post hoc rationale that is not even consistent with the authorities or the NLRB's own case law on which the authority relies. I'm uncomfortable about categorizing what's at issue in this case as a breach of the agreement. This is a wholesale repudiation of the agreement. The law of repudiation of a collective bargaining agreement takes two forms. You can have a de facto repudiation where a particular breach rises to the level of being patent and goes to the heart of the agreement. In which case, that's when you look at whether the employer's breach of the agreement was reasonable or not. Or you can have an entirely different variety, which is the more traditional, where an employer, as in this case, repudiated the entire agreement and denounced it, saying that it was not binding on the employer at all. That's the second case. In those kinds of cases, there were five FLRA decisions where the employer repudiated the entire agreement and the FLRA did not ask whether the interpretation or grounds were reasonable or not. Those cases are the Department of Justice Bureau Prisons case, 68 FLRA 125, Great Lakes Service Center, 9 FLRA 499, the U.S. Patent and Trademark Office, 18 FLRA 713, the AFGE, 21 FLRA 986, and the Department of Defense Dependent Schools, 50 FLRA 424. In those five cases, the employer, as in our case, repudiated the binding nature of the entire agreement  and in none of those cases did the authority analyze whether the breach was reasonable or not. In fact, in the last case, the Bureau of Prisons case, the authority wrote that expressly rejecting an agreement in its entirety will always amount to a clear and patent breach that goes to the heart of the agreement. So that standard about reasonable or not should not apply when the whole agreement is repudiated. But notwithstanding that... In any of those cases, did the employing agency make the argument that's made here, which is, yes, this provision goes to the entire contract, but we have reasonably construed it? That is not my reading of those cases. Those cases were where the employer notified the union that the entirety of the agreement, that it was not going to follow it, it was not bound by it. And even if one were to look at the reasonableness of the Weather Services Breach in this case, I just want to go back to Section 16 of the Ground Rules, which was negotiated pursuant to Article 29 and subsequent to Article 29, where the parties subsequently agreed that, quote-unquote, either party may vote the services of the FNCS at any time. I don't know how you read that out of this package. And that one clause should have been the end of the matter. And the authority did not even acknowledge it in its decision, although that was certainly one of our key arguments opposing the agency's exceptions. And whether or not this was a repudiation of a collective bargaining agreement, I cannot imagine in 40 years of practicing labor law and in reading all the other repudiation cases from the NLRB and FRA, I can't see whether there was ever a repudiation that was more notorious than this one. Not only was the union given a letter saying we're terminating our contract, every employee was sent an email by the employer saying that the Weather Service was terminating the agreement. The NOAA, the parent agency, contacted Congress saying that they were no longer going to honor the agreement, that they were terminating the agreement, and they actually put out a press release noting that the Secretary of Commerce had approved the action. I don't know how you can have a more notorious repudiation than what has occurred in this case. All right, anything further? I think we'll rest on that, Judge Rogers. All right, we will take the case to the judge. This honorable court is now adjourned until Monday morning at 9.30 a.m.
judges: Rogers, Griffith, Katsas